IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| MAYRA RODRIGUEZ VEGA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 6:26-cv-3097-MDH |
| ) | |
| JIM ARNOTT, *et. al.*, ) | |
| ) | |
| Respondents. ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") and parole has been terminated without prior written notice. Pending is her Verified Petition for Writ of Habeas Corpus in which she argues federal statutes and the Due Process Clause require that she be released or granted a hearing. The Court agrees with Petitioner's statutory arguments, and on that basis, it concludes the Petition for Writ of Habeas Corpus should be **GRANTED**.

## BACKGROUND

Petitioner is a native and citizen of Mexico who last entered the United States on or about 1996 or 1997. She has never left the United States for 30 years. Petitioner is married to a United States Citizen and has three U.S. Citizen children, ages 21, 20, and 13. She is a stay-at-home mother. She is the beneficiary of an approved immigrant Petition filed on her behalf by her U.S. Citizen spouse. Petitioner is currently in removal proceedings before the Kansas City Immigration Court. She is scheduled for an individual hearing on March 20, 2026, before the Immigration Judge.

On January 7, 2026, she was taken into custody by ICE/ERO. Petitioner called the Topeka, Kansas Police Department seeking assistance on November 28, 2025, after her husband would not

1

let her leave the residence; she was arrested instead and charged with aggravated battery. Those charges were dismissed on January 6, 2026. She was then turned over to ICE. She has been held without a bond hearing. She is currently being held in Greene County Jail in Springfield, Missouri.

Petitioner brought this proceeding, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, against (1) the acting field office director for ICE Kansas City, (2) the Secretary of DHS, and (3) the Greene County Sheriff, all in their official capacities.[1] She asserts her detention violates the Immigration Nationality Act (INA), and the Due Process Clause. Respondents argue that Petitioner is not entitled to be considered for release, and the Court resolves the parties' arguments below.

## DISCUSSION

I. **Exhaustion of Remedies**

Petitioner would like to be considered for release on bond. Respondent argues this Court should dismiss the petition for lack of jurisdiction as Petitioner has failed to exhaust administrative remedies in not requesting a bond hearing with an IJ. However, any request for such consideration is futile because the DHS and the Executive Office of Immigration Review ("EIOR") have taken the position that Petitioner's detention is mandatory and bond is categorically not permitted. Further, in September 2025, the Board of Immigration Appeals ("BIA") held that a person in Petitioner's circumstances is not entitled to consideration for release on bond. *See Matter of Yajure Hurtado*, 29&N Dec. 206 (BIA 2025).

---

[1] Petitioner's Petition lists Sheriff Arnott as a party by virtue of his administration of the Greene County Jail where Petitioner is currently detained. While Sheriff Arnott was not served in this case as of the date of this Order, the Court construes the proper party holding Petitioner in custody as the Department of Homeland Security through Immigration and Customs Enforcement. As DHS and ICE are utilizing the Greene County Jail to hold Petitioner and other detainees, the Court expects its ruling to apply to the Government and those aiding the Government regarding this specific case.

2

## II. Jurisdiction

Respondents argue that three statutory provisions—8 U.S.C. §§ 1252(e)(3), 1252(g) and (b)(9) deprive this Court of jurisdiction to consider Petitioner's claims. The Court disagrees.

Section 1252(e)(3), entitled "Challenges on validity of the system," limits the scope of judicial review of "orders under Section 1225(b)(1)" and limits venue to the U.S. District Court for the District of Columbia. Petitioner is "not challenging the lawfulness of any particular statute, regulation, or written policy or procedure." Thus, § 1252(e)(3) does not strip this Court of jurisdiction. *See Munoz Materano v. Arteta*, 2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025), at *10. Further, this statute only bars jurisdiction based on those held under 8 U.S.C. § 1225. However, the Court finds that Petitioner is being held under 8 U.S.C. § 1226. Therefore, 8 U.S.C. § 1252(e)(3) does not deprive the Court of Jurisdiction.

Sections 1252(g) and (b)(9) apply narrowly to systemic challenges to regulations implementing expedited removal, review of an order of removal, the decision to seek removal, or the process by which removability will be determined, not to constitutional or statutory claims which precede and are collateral to that process, including, as relevant here, unlawful arrest or detention. *See Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 U.S. Dist. LEXIS 135986, 2025 WL 1953796, at *7 (W.D.N.Y. July 16, 2025); see also *Hernandez-Cuevas v. Olson*, No. 4:25-cv-00830-BP, at 3 (W.D. Mo. Nov. 05, 2025) (citing 8 U.S.C. § 1252(b)(2)). Petitioner is not challenging any of these decisions or actions, so the above provisions do not deprive the Court of jurisdiction. This Court concludes it has jurisdiction over Petitioner's habeas petition.

## III. 8 U.S.C. §§1225 and 1226

3

Petitioner argues that she is being detained in violation of immigration laws because she is not subject to mandatory detention under 8 U.S.C. §1225(b)(2) and is instead subject to the discretionary detention provisions of 8 U.S.C. §1226(a), which requires that she be given a bond hearing. Respondents argue Petitioner is properly detained because she entered and has remained in the United States without inspection or admission and is therefore deemed an "applicant for admission" to whom such mandatory detention under 8 U.S.C. § 1225(b)(2)(A) applies and is ineligible for a custody redetermination hearing before an IJ. Considering the parties' arguments, this Court joins the numerous federal courts that have rejected Respondent's interpretation of § 1225(b)(2).[2]

**Statutory Background**

Historically, noncitizens already residing in the country, such as Petitioner, were placed in standard removal proceedings and received bond hearings, unless their criminal histories rendered them ineligible under § 1226(c). *See Jennings v. Rodriguez,* 583 U.S. 281, 288 138 S.Ct. 830, 200 L.Ed.2d 122 (2018). Noncitizens who resided in the United States, but who had previously entered without inspection, were not deemed "arriving aliens" under § 1225(b), but were instead subject to § 1226(a). *See Jennings v. Rodriguez*, 583 U.S. 281, 287, 138 S.Ct. 830 ("In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking* admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the* country pending the outcome of removal proceedings under §§ 1226(a) and (c).")

---

[2] As of the date of this Order the Court is not aware of any appellate decisions from this Circuit. The Court however will highlight cases from District Courts in this Circuit as supporting the analysis in this case: *Barrajas v. Noem*, 2025 WL 2717650, at *3 (S.D. Iowa Sep. 23, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427, at *4 (N.D. Iowa Sept. 23, 2025); *Jose J.O.E. v. Bondi*, 2025 WL 2466670, at *6-7 (D. Minn. Aug. 27, 2025). The Court is aware that the Fifth Circuit issued a 2-1 decision from a 3-judge panel agreeing with the Respondents' position and rejecting Petitioner's arguments and hundreds of district court decisions across the country. *See Buenrostro-Mendez v. Bondi*, Case No. 25-20496 (5th Circuit, 02/06/2026). The Fifth Circuit's decision does not bind this Court.

(emphasis added). In *Jennings*, the Court framed its discussion of §1225 as part of a process that "generally begins at the Nation's borders and ports of entry, where the Government must determine whether a [noncitizen] seeking to enter the country is admissible." 583 U.S. at 287, 138 S.Ct. 830. Then, when discussing §1226, *Jennings* describes it as governing "the process of arresting and detaining" noncitizens who are living "inside the United States" but "may still be removed," including noncitizens "who were inadmissible at the time of entry." *Id.* at 288, 138 S.Ct. 830.

The legislative history behind §1226 also tends to support Petitioner's argument that it governs noncitizens like herself that reside in the United States but previously entered without inspection. Before IIRIRA passed, the predecessor statute to §1226(a) governed deportation proceedings for all noncitizens arrested within the United States. *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1247 (W.D. Wash. 2025) (citing 8 U.S.C. § 1252(a)(1) (1994) ("Pending a determination of deportability ... any [noncitizen] ... may, upon warrant of the Attorney General, be arrested and taken into custody."); *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) ("A deportation hearing was the 'usual means of proceeding against a[ ] [noncitizen] already physically in the United States[.]'")). This predecessor statute, like §1226(a), included discretionary release on bond. *Rodriguez*, 779 F.Supp.3d at 1260 (citing § 1252(a)(1) (1994) ("[A]ny such [noncitizen] taken into custody may, in the discretion of the Attorney General ... be continued in custody ... [or] be released under bond[.]")). Upon passing IIRIRA, Congress declared that the new §1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond a[ ] [noncitizen] who is not lawfully in the United States." *Rodriguez*, 779 F.Supp.3d at 1260 (citing H.R. Rep. No. 104-469, pt. 1, at 229; *see also* H.R. Rep. No. 104-828, at 210 (same)). Because noncitizens like Petitioner were entitled to discretionary detention under §1226(a)'s predecessor statute and Congress declared its

5

scope unchanged by IIRIRA, this background supports Petitioner's position that she too is subject to discretionary detention under §1226(a).

Now, pursuant to the July 8, 2025, ICE memo entitled "Interim Guidance Regarding Detention Authority for Applicant for Admission," DHS and ICE deem any person who entered the United States without inspection as an "applicant for admission" under §1225(a), and therefore argue that they are subject to mandatory detention under §1225(b)(2)(A). The Court agrees with Petitioner that a plain reading of §1226(a) and an analysis of statutory construction support the argument that §1226(a) applies to her rather than §1225(b)(2).

### **Plain Language**

The plain language of §1225(b)(2) provides that "an alien *who is an applicant for admission*," shall be detained for a proceeding under §1229(a) of this title, "if the examining immigration officer determines that [the alien] *seeking admission* is not clearly and beyond a doubt entitled to be admitted." (emphasis added). Respondents' interpretation does not follow that plain language. Petitioner is not "seeking admission," he is already present in the U.S. *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025) (explaining that for §1225(b)(2)(A) to apply, "an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) not clearly and beyond doubt entitled to be admitted'"). One who is "seeking admission" is presently attempting to gain admission into the United States. *Id.* at *6 (discussing the plain meaning of "seeking"); *see also Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2371588, *7 (S.D.N.Y. Aug. 13, 2025) (interpreting "seeking admission" to mean a person who is actively "seeking" lawful entry. *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025) (" '[S]eeking admission' ... implies action – something that is currently occurring, and in this

6

instance, would most logically occur at the border upon inspection."). Through its reading of the statutory definition of "applicant for admission" in § 1225(a)(1), the Government has completely ignored the "seeking admission" language. *Lopez Benitez*, 2025 WL 2371588, at *6 (explaining how the Government's preferred interpretation would simply strike the phrase "seeking admission" from the statute in violation of the rule of statutory interpretation prohibiting a construction that turns terms into surplusage). Noncitizens who are present in the country for years, are not actively 'seeking admission.'" *See Hernandez-Cuevas v. Olson*, No. 4:25-cv-00830-BP, at 3 (W.D. Mo. Nov. 05, 2025) (citing *Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (quotations omitted)). Thus, as Petitioner has been in the United for over 30 years, she is not "seeking admission" within the meaning of §1225(b)(2)(A).

### Legislative Intent

Further, Congress specified that the mandatory detention provision of § 1225(b)(2)(A) applies to those "seeking admission" and did not use the phrase "applicant for admission" that it defined previously in § 1225(a)(1). *See J.A.M. v. Streeval*, 2025 WL 3050094, at *2 (M.D. Ga. Nov. 1, 2025) ("Had Congress intended for this subsection to apply to all applicants for admission, it could have said so by simply replacing the phrase "an alien seeking admission" with the term "an applicant for admission;").

### Statutory Construction

Moreover, Respondents' interpretation is inconsistent with recent amendments to § 1226. In 2025, Congress passed the Laken Riley Act, which added § 1226(c)(1)(E) and requires detention of aliens who are inadmissible pursuant to § 1182(a)(6)(A), (D), or (E). *Hernandez-Cuevas* (W.D. Mo. Nov. 5, 2025) at 6. But under the Respondent's interpretation of these provisions, such aliens

are already subject to mandatory detention under § 1225(b)(2)—which means the 2025 amendments to § 1226 have no purpose. *Id*. "[O]ne of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Id.* at 6 (citing *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up)). Moreover, "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Id.* at 6 (citing *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)).

For these reasons, Respondents' interpretation of §1225 is not supported by the plain language of the text, statutory construction, or legislative intent. Thus, Petitioner is subject to the discretionary detention provisions of 8 U.S.C. §1226, not §1225.

### **Section 1226(c)**

Section 1226(c) provides, however, that detention is mandatory for certain nonresidents. *Doe v. Moniz*, 800 F. Supp. 3d 203, 211 (D. Mass. 2025). Prior to a recent amendment, section 1226(c) provided that DHS "shall take into custody" nonresidents who "hav[e] committed" certain enumerated offenses, *see* 8 U.S.C. § 1226(c)(1)(A)–(B), have "been sentence[d] to a term of imprisonment for at least 1 year" for certain enumerated offenses, *Id*. § 1226(c)(1)(C), or who are members or participants in terrorist activities or organizations, *Id*. § 1226(c)(1)(D). In such cases, the Supreme Court has found that detention without a bond hearing is justified "for the brief period necessary for [the nonresident's] removal proceedings." *Moniz*, 800 F. Supp. 3d at 211 (citing *Demore v. Kim*, 538 U.S. 510, 513, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003)).

As relevant here, the Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025), added a new subparagraph, 8 U.S.C. § 1226(c)(1)(E), that makes detention mandatory for nonresidents who

8

satisfy two conditions. First, the nonresident must be "inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title[.]" 8 U.S.C. § 1226(c)(1)(E)(i). Second, the nonresident must "[be] charged with, ... [be] arrested for, ... [be] convicted of, admit[ ] having committed, or admit[ ] committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or" certain violent offenses. 8 U.S.C. § 1226(c)(1)(E)(ii). Under the Laken Riley Act, detention is mandatory even if a nonresident has not been *convicted* of the enumerated offenses, so long as he has been arrested for one of them.

Respondents argue that Petitioner is subject to mandatory detention under the Laken Riley Act because she was charged with aggravated battery.[3] Petitioner makes no argument as to the applicability of 8 U.S.C. § 1226(c)(1)(E)(ii) to the facts of her case. However, the Court takes issue with the Due Process, or lack thereof, that results from a classification under 8 U.S.C. § 1226(c)(1)(E)(ii).

When the Supreme Court considered Section 1226(c) prior to the Laken Riley Act amendment, it found the Section "mandate[d] detention during removal proceedings for a limited class of deportable aliens—including those convicted of an aggravated felony." *Doe v. Moniz*, 800 F. Supp. 3d 203, 211 (D. Mass. 2025) (citing *Demore*, 538 U.S. at 517–18, 123 S.Ct. 1708). And critically, in *Demore*, the habeas petitioner "[did] not dispute the validity of his prior convictions, which were obtained following the full procedural protections our criminal justice system offers." *Id*. (citing *Demore*, 538 U.S. at 513, 123 S.Ct. 1708). The Supreme Court held that the detention of "a criminal alien who has conceded that he is deportable, for the limited period of [the detainee's]

---

[3] It should be noted that while Petitioner was once arrested for and charged with an alleged offense which is covered by the Lakin Riley Act, at this time she is not under arrest for the alleged offense. The charges were dismissed, and she was released from custody. She has never been tried or convicted for the alleged offense on which the Government brings detention under Lakin Riley Act.

9

removal proceedings" did not violate due process because such detention "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* (citing *Demore*, at 528, 531, 123 S.Ct. 1708). The Court underscored the legislative findings supporting Section 1226(c)—prior to the Laken Riley Act's amendments to that section—of the need to detain "deportable criminal aliens" based on statistics suggesting their likelihood of not appearing for removal hearings and their likelihood of subsequent arrests before deportation proceedings began. *See id.* (citing *Demore*, at 518–21, 123 S.Ct. 1708). As the First Circuit has explained, *Demore* upheld the constitutionality of a mandatory detention procedure as "applie[d] to a class of noncitizens who had *already been convicted* (beyond a reasonable doubt) of committing certain serious crimes." *Id.* (citing *Hernandez-Lara v. Lyons,* 10 F.4th 19, 35 (1st Cir. 2021) (emphasis added)).

The court in *Moniz* pointed out that "the Congress enacting the Laken Riley Act made no findings that "merely being *arrested for* ...[the enumerated crimes]... correlated with flight risk or dangerousness in any way." *See id*. at 216 (finding that respondents failed to explain how detention without a bond hearing in such circumstances serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings).

Respondents in this case similarly make no argument how detention without a bond hearing in such circumstances serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings. Like the court in *Moniz*, this Court will use the three-part test set out by *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) to assess due process challenges by individuals detained under Section 1226 and seeking a bond hearing. Under *Mathews*,

> identification of the specific dictates of due process generally requires consideration of three distinct factors: *First*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. 893 (emphasis added).

### *Mathews* Factors

Undoubtedly, the private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004). Petitioner was taken into custody by ICE/ERO on January 7, 2026, after her charge for aggravated battery was dismissed on January 6, 2026. Her arrest stems from a domestic disagreement. Petitioner called the Topeka, Kansas Police Department seeking assistance on November 28, 2025, after her husband would not let her leave the residence; she was arrested instead and charged with aggravated battery. She is a stay-at-home mom with a daughter under her care, and she has lived in this country for over 30 years. Petitioner has now been detained and unable to fulfill her responsibilities for over 60 days.

The risk of erroneous deprivation of Petitioner's liberty is high where, as discussed above, detention is based on an arrest for which charges have been dismissed and the underlying conduct for which bears no relationship to dangerousness or flight risk. And "once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." *Zadvydas v. Davis*, 533 U.S. 678, 691-692, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

The final factor "ultimately entails an assessment of the 'public interest.'" *Hernandez-Lara*, 10 F.4th at 32 (quoting *Mathews*, 424 U.S. at 335, 347, 96 S.Ct. 893). In *Hernandez-Lara*,

11

"[t]he government fail[ed] to explain why its proffered interest in securing appearance at removal proceedings and for deportation holds sway where a noncitizen is not a flight risk." *Id.* Indeed, "limiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention." *Id*. at 33 (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 854 n.11 (2d Cir. 2020), for budget data on daily costs of ICE detention). Furthermore, "such unnecessary detention imposes substantial societal costs" such as reduced economic contributions and tax payments by detained immigrants. *Id.* Here, the public has no interest in the detention without bond of someone against whom no criminal charges are pending and who is an active member in her community and a pillar for her family.

In sum, the *Mathews* factors weigh in favor of Petitioner, and the court finds that her detention without a bond hearing violates her Due Process rights.

IV.     **Attorneys' Fees**

Petitioner requests an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Pursuant to the EAJA, a court shall award to a prevailing party fees and other expenses incurred by that party in any civil action, brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C § 2412(d)(1)(A). To be eligible for fees under the EAJA, a petitioner must submit an application within thirty days of final judgment, and the petitioner's net worth must be less than two million dollars at the time the civil action was filed. *See id.* §§ (d)(1)(B), (d)(2)(B)(i). The EAJA was enacted with the purpose of removing the financial disincentive for individuals challenging or defending against government action and encouraging challenges to improper government action

12

as a means of helping formulate better public policy. *See, e.g., Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." (citation omitted)); *Boudin v. Thomas*, 732 F.2d 1107, 1114 (2d Cir. 1984) ("The EAJA was passed partly to *encourage* challenges to improper actions by government agencies. The drafters perceived legal actions as helping to formulate public policy." (citations omitted)).

As explained throughout, the Court finds the position of the United States is not substantially justified. The manner in which the provisions have historically been interpreted, legislative intent, statutory construction, and the plain text of the statutes all support that the United States is not substantially justified in its novel interpretation of §1225. Thus, Petitioner may pursue an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act.

## **CONCLUSION**

For the foregoing reasons, the Petition is **GRANTED**. No later than February 27, 2026, Petitioner must be provided a bond hearing. Any decision to retain Petitioner in custody following the bond period shall set forth the reasons for the continued detention.

It is **FURTHER ORDERED** that Respondents are enjoined from relocating Petitioner outside the jurisdiction of this Court prior to compliance with this Order. Petitioner shall promptly report to the Court any failure to comply with this Order by Respondent. Petitioner may submit an application for fees under the EAJA within thirty days of the entry of final judgment.

**IT IS SO ORDERED**.

DATED: February 20, 2026

                                     */s/ Douglas Harpool*
                                     **DOUGLAS HARPOOL**
                                     **UNITED STATES DISTRICT JUDGE**